IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INACOM CORP., et al., | Bankruptcy Case No. 00-2426 (PJW) |
| Debtors. | |
| INACOM CORP., on behalf of all affiliated debtors, | Civil Action No. 04-CV-148 (GMS) |
| Plaintiff, | |
| vs. | |
| TECH DATA CORPORATION, | |
| Defendant and Third-Party Plaintiff, | |
| vs. | |
| COMPAQ COMPUTER CORP., ITY CORP., and CUSTOM EDGE, INC., | |
| Third-Party Defendants. | |

### HEWLETT-PACKARD COMPANY'S PROPOSED
### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Dated: August 15, 2005
      Wilmington, Delaware

                      MORRIS, NICHOLS, ARSHT & TUNNELL
                      William H. Sudell, Jr. (No. 463)
                      Derek C. Abbott (No. 3376)
                      1201 N. Market Street
                      Wilmington, DE  19899-1347
                      (302) 658-9200

                      - and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA 94111
(415) 834-3800

Attorneys for Third-Party Defendant
Hewlett-Packard Company

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| Introduction |   | 4 |
| I. | Findings of Fact | 5 |
| II. | Tech Data's Claims for Breach of Contract Based on the Asset Purchase Agreement – Conclusions of Law | 10 |
| III. | Tech Data's Claims for Breach of Contract Based on the Francis Letter Dated February 16, 2000 – Conclusions of Law | 11 |
| IV. | Tech Data's Claims for Indemnity Based on the Asset Purchase Agreement and the Francis Letter Dated February 16, 2000 – Conclusions of Law | 12 |
| V. | Other – Conclusions of Law | 13 |

Third-party defendant Hewlett-Packard Company ("HP"), as successor in interest to Compaq Computer Corporation ("Compaq") and ITY Corporation, submits the following proposed findings of fact and conclusions of law in accordance with the Court's Scheduling Order entered October 4, 2004.

## INTRODUCTION

On June 16, 2000, Inacom Corp. ("Inacom") and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On or about May 15, 2002, Inacom filed numerous complaints to recover preferences, including a complaint against Tech Data Corporation ("Tech Data"). On April 9, 2004, Tech Data filed a third-party complaint against Compaq and its subsidiary seeking reimbursement if it is found liable for any preferential transfers.

Tech Data cross-complained against Compaq on the theory that it is a third-party beneficiary to an Asset Purchase Agreement between Inacom and Compaq, pursuant to which Compaq purchased certain assets and assumed certain liabilities related to Inacom's hardware distribution business. Tech Data contends that Compaq breached the Asset Purchase Agreement by failing to pay the liabilities that were paid by Inacom that are now the subject of a preference action. Alternatively, Tech Data contends that Compaq breached a letter agreement in which Compaq allegedly promised to assume or guarantee all of Inacom's outstanding debt. Tech Data asserts claims of breach of contract and indemnity against Compaq.

HP disputes the right of Tech Data to enforce the terms of the Asset Purchase Agreement because the agreement specifically states that there are no third-party beneficiaries. HP also disputes that there was ever an agreement between Compaq, Inacom, or Tech Data to assume or guarantee the amounts at issue.

Based on the testimony presented at trial and other evidence submitted by the parties, the Court makes the following findings of fact and conclusions of law.

I. **Findings of Fact**

1. InaCom Corp. ("Inacom"), Compaq Computer Corporation ("Compaq") and ITY Corp. entered into an asset purchase agreement (the "Asset Purchase Agreement") that closed on February 16, 2000 whereby ITY Corp. acquired assets related to InaCom's distribution business for approximately $369,500,000.

2. ITY Corp. was at the time of the closing of the Asset Purchase Agreement a wholly owned subsidiary of Compaq. ITY Corp. changed its name to Custom Edge, Inc. and was then merged into Compaq, which was then acquired by and merged into Hewlett-Packard Company ("HP"). HP has assumed all liabilities of ITY Corp., Custom Edge, Inc. and Compaq.

3. The Asset Purchase Agreement is solely between Inacom and its affiliates, and Compaq and its subsidiary.

4. Section 13.05 of the Asset Purchase Agreement provides that the agreement shall be construed according to New York law without regard to the conflicts of law rules.

5. Section 13.08 of the Asset Purchase Agreement provides that no other party is an intended beneficiary of the agreement.

6. As part of the Asset Purchase Agreement, ITY Corp. (now known as HP) agreed to assume responsibility for payment of certain accounts payable of InaCom, including responsibility for certain accounts payable of Inacom owed to Tech Data.

7. The terms of the Asset Purchase Agreement do not require Compaq to guarantee payments made by Inacom to Tech Data, and do not otherwise obligate Compaq to indemnify Tech Data for any recovery obtained by Inacom for preferential payments.

8. On Friday, February 11, 2000, Inacom closed the books on its account payable records in anticipation of closing the asset purchase transaction the following Monday. On or

about the same date, Inacom emailed to ITY Corp./Compaq an Accounts Payable Aging Report ("AP Report") that describes the Inacom accounts payable assumed by ITY Corp. pursuant to the Asset Purchase Agreement, including account payable #102598 relating to Tech Data.

9.  Compaq paid all of the Tech Data accounts payable listed on the AP Report.

10. Prior to the close of the asset sale, Inacom wrote numerous checks in payment of outstanding Tech Data invoices. These checks were not immediately mailed to Tech Data, and were held in the office of Inacom's treasurer, Richard Oshlo, (the "Held Checks"). The alleged preference payments sought to be recovered by Inacom from Tech Data include the Held Checks.

11. The Held Checks include three checks made payable to Tech Data in the aggregate amount of $4,555,370.21 as follows: check no. 708391 in the amount of $1,026,316.45 payable from Inacom to Tech Data was issued on February 3, 2000 and cleared on March 22, 2000; check no. 709697 in the amount of $1,334,959.01 payable from Inacom to Tech Data was issued on February 8, 2000 and cleared on March 24, 2000; and check no. 710575 in the amount of $2,194,094 payable from Inacom to Tech Data was issued on February 10, 2000 and cleared on March 30, 2000.

12. The AP Report does not reflect invoices paid by Held Checks because, consistent with Inacom's accounting systems, once Inacom wrote a check the invoice was no longer shown on Inacom's account payable report.

13. Inacom and Compaq did not intend that Compaq would assume liability for Held Check amounts under the Asset Purchase Agreement.

14. At the time of the Asset Purchase Agreement, Compaq was unaware that Inacom had written checks in payment of Tech Data invoices, which were held in the office of Inacom's treasurer.

15. Tech Data was aware that Inacom was holding checks that would be paid after the closing of the Asset Purchase Agreement.

16. On February 3, 2000, Michael Ward of Tech Data sent an email to Inacom's Treasurer, Dick Oshlo, and others at Inacom, listing the check number and amount of certain checks payable to Tech Data "that have been reported as being in Inacom's Treasury." Mr. Ward requested a schedule of releasing the checks to Tech Data's lockbox in order for Tech Data to determine when it would resume shipping to Inacom.

17. On February 8, 2000, Michael Ward of Tech Data sent an internal email to his supervisor, Mike Zava, summarizing a conference call with certain Inacom managers. The email describes the pending asset purchase by Compaq and states, "In the meantime, all checks payable to all Inacom vendors at this time are being held in Inacom's treasury department. This includes 5 checks totaling $4.9 million today payable to Tech Data. No checks will be released by Inacom until at least a week after the closing per Dick Oshlo." "Additionally, per the Inacom managers, Compaq will assume all vendor liabilities on account at closing unless Inacom is holding a check in Treasury to pay such liabilities."

18. On February 9, 2000, Michael Ward sent a letter to David Guenthner, Vice President of Inacom, summarizing the conference call with Inacom managers that took place on February 8, 2000. Michael Ward again stated that "all checks payable to all Inacom vendors at this time are being held in Inacom's Treasury Department." Further, "An important item of note, as discussed is that Compaq will assume all vendor liabilities on account at closing unless Inacom is holding a check in its Treasury to pay such liabilities. Such checks from Inacom will then be released over several days to its vendors though no sooner than a least a week after the closing." The letter requests that Mr. Guenther immediately update or correct Mr. Ward if any information contained in the letter is incorrect.

{00204885.DOC v 3}                                    7

19. Two days later, Michael Ward received a copy of his February 9, 2000 letter back from Dave Guenthner with handwritten interlineations. The handwritten notes corrected the letter in some respects, including to reflect that checks held by Inacom would "begin to" be released over several days, but no sooner than "after Inacom's A/R securitization is posted and terminated, about 15 days after closing."

20. Tech Data was aware, and did not dispute, that Held Checks would be paid by Inacom after the closing of the Asset Purchase Agreement. Tech Data was also aware that Compaq only assumed open payables in connection with the Asset Purchase Agreement.

21. After the closing of the Asset Purchase Agreement, Tech Data maintained separate trade account receivable numbers for Compaq/Custom Edge (#953001) and Inacom (#1147688).

22. On February 16, 2000, Bill Francis of Compaq wrote a letter to Tech Data ("Francis Letter") at the request of Inacom following the close of the Asset Purchase Agreement. The Francis Letter states that as part of the asset purchase transaction between Compaq and Inacom, Compaq "assumed the obligation to pay all of the outstanding amount on the referenced account, subject to the terms and conditions of such account." The referenced account is "Account Payable #102598 of InaCom Corporation."

23. The Francis Letter was sent in connection with the closing of the Asset Purchase Agreement and arises from the terms of the agreement.

24. The Francis Letter was sent from Texas, where Compaq was principally located.

25. The Francis Letter does not state that Compaq will guarantee payments made by Inacom to Tech Data, and does not otherwise obligate Compaq to indemnify Tech Data for any recovery obtained by Inacom for preferential payments.

26. Between February 18, 2000 and March 21, 2000, Michael Ward and other Tech Data employees exchanged emails regarding the status of checks received from Inacom and Compaq, respectively. On March 7, 2000, Mr. Ward stated that Tech Data had received $3.9 million in checks from Inacom, leaving $4.5 million still being held in Inacom's Treasury Department; and Tech Data had received $4.5 million from Compaq, with a balance due of $2.2 million.

27. Internal Tech Data emails exchanged between February 18, 2000 and March 21, 2000 reflect that Tech Data continued to pursue the release of Held Checks from Inacom by contacting Inacom's Treasury Department.

28. An Account Receivable Note Management Report maintained by Tech Data contains notes dated between February 18, 2000 and June 1, 2000 that reflect Tech Data's communications with Inacom regarding the release of Held Checks and payment of past due invoices.

29. On March 22, 2000, March 24, 2000, and March 30, 2000, Tech Data negotiated three Held Checks that it received from Inacom in the aggregate amount of $4,555,370.21, which are the subject of Inacom's preference action. Tech Data did not return the Held Checks received from Inacom; nor did it question or dispute its receipt of the checks.

30. Consistent with the Francis Letter, Compaq paid all of the Tech Data invoices submitted to Inacom that were reflected on the AP Report as Account Payable #102598.

31. Account Payable #102598 on the AP Report did not include the invoices of Tech Data which were paid by the Held Checks.

32. Bill Francis did not intend, and was not authorized, to commit Compaq to any obligations that were not contained in the Asset Purchase Agreement.

33. There was no mutual assent or meeting of the minds between Compaq and Tech Data with respect to the terms of the Francis Letter, including the meaning of the "outstanding amount" on the referenced account, Account Payable #102598 of Inacom Corporation.

34. Neither Tech Data nor Compaq intended that Compaq would assume the obligation for Held Check amounts, or that the "outstanding amount" referenced in the Francis Letter included Held Check amounts.

35. Tech Data and Compaq never discussed what might happen in the event that Inacom filed a petition for bankruptcy.

36. Tech Data never sought payment of the Held Check amounts from Compaq prior to filing its third-party complaint against HP.

37. On June 27, 2000, Tech Data filed a proof of claim in Inacom's bankruptcy for $929,187.11, representing amounts due from Inacom to pay for computer products supplied by Tech Data. The proof of claim lists invoices owed by Inacom, with dates ranging between August 1997 and June 2000.

38. On June 5, 2002, Inacom filed a first amended complaint against Tech Data to avoid and recover preferential transfers. On April 9, 2004, Tech Data filed an answer and third-party complaint against Compaq and its subsidiary.

## II. Tech Data's Claims For Breach of Contract Based on the Asset Purchase Agreement– Conclusions of Law

1. Under New York law, where a contract's language expressly bars contractual liability to a third party, no third party right to enforce the contract may be found. *Nepco Forged Products, Inc. v. Consolidated Edison*, 470 N.Y.S.2d 680, 681 (App.Div. 1984) (holding that the clause "Nothing in this Agreement, express or implied, is intended to confer on any other person

any rights or remedies, in or by reason of this Agreement" prevented a third party from bringing a breach of contract claim).

2.  Tech Data lacks standing to bring claims against either Compaq or its subsidiary as a third-party beneficiary of the Asset Purchase Agreement because Section 13.08 of the agreement expressly negates the intent of Inacom and Compaq to confer any rights or remedies upon third parties.

3.  Assuming that Tech Data has standing to bring claims under the Asset Purchase Agreement, Compaq fully performed its obligations under the agreement. In particular, the Court finds that Compaq assumed and paid open accounts payable of Inacom under the Asset Purchase Agreement, as identified in the AP Report exchanged between Compaq and Inacom, which excluded obligations represented by Held Checks that were subsequently released by Inacom and paid to Tech Data. Accordingly, judgment is granted in HP's favor on the First and Third Claims for Relief.

## III.  Tech Data's Claims For Breach of Contract Based on the Francis Letter Dated February 16, 2000– Conclusions of Law

1.  There is no manifestation of mutual assent if the parties to an exchange attach materially different meanings to their manifestations and neither party knows or has reason to know the meaning attached by the other. *See generally* Restatement (Second) of Contract § 20 (effect of misunderstanding). *See also Gupta v. University of Rochester,* 395 N.Y.S.2d 566, 567 (App. Div. 1977) ("Where the offeror, using ambiguous language, reasonably means one thing and the offeree reasonably understands differently, there is no contract.").

2.  A party has a right to rescind a contract for unilateral mistake if the mistake was known to the other party at the time of the negotiating of the contract and was not corrected by it. *Sheridan Drive-In, Inc. v. State,* 228 N.Y.S.2d 576, 582 (App. Div. 1962).

3.  The Francis Letter does not constitute an enforceable agreement between Compaq and Tech Data because there was no mutual assent between the parties to the letter regarding the alleged payment obligations at issue.

4.  Assuming that the Francis Letter constitutes an enforceable contract, Compaq complied with the explicit terms of the Francis Letter and otherwise fulfilled its obligations by paying the outstanding amount on the referenced Account Payable #102598 of Inacom.

5.  The Court concludes that there was no contract between Compaq and Tech Data, and no breach of contract by Compaq, based on the Francis Letter. Accordingly, judgment is granted in HP's favor on the Second Claim for Relief.

6.  For an agreement to be enforceable there must also be some consideration in exchange for the promise. *See, e.g., In re Johnson's Estate,* 346 N.Y.S.2d 283, 286-87 (Sur. Ct. 1973) (bank promise to serve as trustee in the future at reduced rate if it were selected did not bind either party; contract unenforceable because it lacked mutuality of obligation).

7.  A guaranty that is not part of the original exchange for which the oblige bargained must be supported by separate consideration. Restatement (Third) of Suretyship and Guaranty § 9(2)(a), pp. 9-10 (ALI 1996); *United States v. Meadows,* 753 F.2d 590, 597 (7th Cir. 1985).

8.  The Francis Letter was not supported by consideration.

### IV. Tech Data's Claims For Indemnity Based on the Asset Purchase Agreement and the Francis Letter Dated February 16, 2000 – Conclusions of Law

1.  For reasons set forth above, Tech Data lacks standing to bring claims against either Compaq or its subsidiary as a third-party beneficiary of the Asset Purchase Agreement.

2.  For reasons set forth above, the Francis Letter is not an enforceable contract.

3.  For reasons set forth above, the Court finds that Compaq fully performed its obligations under the Asset Purchase Agreement (and any potential obligations under the Francis Letter). Compaq did not assume the obligation to indemnify Tech Data for Held Check amounts paid by Inacom under the Asset Purchase Agreement or the Francis Letter. Accordingly, judgment is granted in HP's favor on the Fourth and Fifth Claims for Relief.

V.  **Other – Conclusions of Law**

1.  Waiver constitutes the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. BLACK'S LAW DICTIONARY (5th ed. 1979).

2.  The equitable defense of laches arises where the party seeking relief "engaged in unreasonable and inexcusable delay that prejudiced the defendant." *Waddell v. Small Tube Products,* 799 F. 2d 69, 74 (3d Cir. 1986). Elements of the defense are (1) lack of diligence by the plaintiff in pursuing a claim, and (2) prejudice to the defendant in asserting a defense. *Id.*

3.  Assuming the Court concludes that claims under the Francis Letter are not governed by New York law, the claims are governed by the law of Texas based on the "most significant relationship test." Restatement (Second) of Conflict of Laws § 188 (1971). *See also Falkenberg Capital Corp. v. Dakota Cellular, Inc.,* 925 F. Supp. 231, 235 (D. Del. 1996). Under Texas law, Tech Data's claims for breach of an alleged written contract dated February 16, 2000 are barred by the four-year statute of limitations. Tex. Civ. Prac. & Remedies Code § 16.004(c).

Dated: August 15, 2005        MORRIS, NICHOLS, ARSHT & TUNNELL

                              /s/ William H. Sudell, Jr.
                              William H. Sudell, Jr. (No. 463)
                              Derek C. Abbott (No. 3376)
                              1201 N. Market Street
                              Wilmington, DE 19899-1347
                              (302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA 94111
(415) 834-3800

Attorneys for Third-Party Defendant
Hewlett-Packard Company