UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

In re:

INACOM CORPORATION, *et al.*,

        Debtors.
_____/

INACOM CORPORATION, etc.,

        Plaintiff,

v.

TECH DATA CORPORATION,

        Defendant and
        Third Party Plaintiff,

v.

HEWLETT-PACKARD COMPANY,
COMPAQ COMPUTER CORP.,
ITY CORP., and CUSTOM EDGE, INC.,

        Third-Party Defendants.
_____/

Civil Action No. 1:04-cv-00148-GMS

Bankr. Case No. 00-02426 (PJW)
Adv. Pro. No. 02-03496 (PJW)

## TECH DATA CORPORATION'S TRIAL BRIEF

        HERLIHY, HARKER & KAVANAUGH
        James F. Harker (Bar No. 255)
        1300 North Market Street, Suite 400
        Wilmington, Delaware 19899
        Telephone: (302) 654-3111

        ADORNO & YOSS, LLP
        Charles M. Tatelbaum (Admitted Pro Hac Vice)
        Stephen C. Hunt (Admitted Pro Hac Vice)
        350 E. Las Olas Boulevard, Suite 1700
        Fort Lauderdale, FL 33301
        Telephone: (954) 763-1200
        Facsimile: (954) 766-7800

        *Attorneys for Tech Data Corporation*

Pursuant to this Court's Scheduling Order, Defendant, Tech Data Corporation ("Tech Data"), files this Trial Brief.

## I.  NATURE OF THE CASE

In this case, Inacom Corp. ("Inacom") alleges that certain payments made by Inacom to Tech Data before the filing of the bankruptcy case can be set aside as preferences pursuant to 11 U.S.C. § 547 and 11 U.S.C. § 550. The payments were made by Inacom to Tech Data for computer products and services Tech Data sold and Inacom accepted and retained.

Tech Data denies that Inacom was insolvent at the time of the payments and denies that the payments were preferences. Tech Data further contends that the payments were not made for or on account of an "antecedent debt" owed by the transferor debtor before such transfers were made, within the meaning of Section 547(b)(2) of the Bankruptcy Code, due to Compaq Computer Corporation's ("Compaq") assumption of the indebtedness, and, cannot be avoided.

## II.  CONTESTED FACTS TECH DATA WILL ESTABLISH AT TRIAL

A.  Inacom has failed to meet its burden of proof under 11 U.S.C. § 547(b).

B.  Tech Data has proven that it was no longer a creditor of Inacom at the time that Tech Data received the transfers from Inacom. Inacom has therefore failed to carry its burden of proof under 11 U.S.C. § 547(b)(1). Inacom has failed to meet its burden of proof that any monies paid by Inacom to Tech Data that are the subject of this dispute were "to or for the benefit of a creditor," within the meaning of 11 U.S.C. § 547(b)(1). If tech data was no longer a creditor at the time of any transfers by Inacom to Tech Data, Inacom cannot prove preference liability on the part of Tech Data.

B. Tech Data has proven that there was no longer indebtedness between itself and Inacom at the time that Tech Data received the transfers from Inacom. Upon the assumption of the Inacom accounts payable to Tech Data by Compaq, the indebtedness by Inacom was canceled. Accordingly, any monies paid to Tech Data by Inacom after the Compaq Sale were not on account of a legal obligation by Inacom to Tech Data. Inacom has therefore failed to carry its burden of proof under 11 U.S.C. § 547(b)(2).

C. Tech Data has rebutted the presumption of insolvency and as set forth in more detail below, Inacom has failed to establish that it was insolvent from the beginning of the preference period to April 22, 2000. Inacom has therefore failed to carry its burden of proof under 11 U.S.C. § 547(b)(3).

D. Tech Data was entitled to receive payments from Compaq and would have been entitled to such payments irrespective of a hypothetical liquidation of Inacom under chapter 7 of the Bankruptcy Code. Inacom has therefore failed carry its burden of proof under 11 U.S.C. §547(b)(5).

E. Section 550 of the Bankruptcy Code does not apply if the payments cannot be avoided, and Inacom has failed to prove that the payments to Tech Data are avoidable under Section 547 of the Bankruptcy Code.

## III. TECH DATA'S THEORY OF DEFENSE TO INACOM'S PREFERENCE CLAIM

### A. Inacom Was Not Insolvent at the Time the Payments Were Made

1. The factual evidence established that Tech Data has rebutted the presumption of insolvency and, therefore, Inacom has the burden of proof to establish insolvency at the time of the payments made by Inacom to Tech Data by a preponderance of the evidence. *See In re Trans World Airlines, Inc.*, 180 B.R. 389, 404 (Bankr. D. Del. 1994), *affirmed in part, reversed in part on other grounds*, 203 B.R. 890 (D. Del. 1996), *reversed*, 134 F.3d 188 (3rd Cir. 1998) (Third

Circuit affirmed the bankruptcy court and reversed the district court's reversal); *see also In re Lids Corp.*, 281 B.R. 535, 540 (Bankr. D. Del. 2002); 11 U.S.C. § 547(g); FED. R. EVID. 301.

2. "Insolvency" is defined as a "financial condition such that the sum of . . . [the debtor's] debts is greater than all of . . . [the debtor's] property, at a fair valuation, exclusive of" exempt and fraudulently transferred property. 11 U.S.C. § 101(32)(A); *see also In re Lids Corp.*, 281 B.R. at 540. This test is commonly referred to as the Balance Sheet Test. *See id.* There is no statutory guidance as to the manner of assessing the "fair valuation" of assets so the determination of "[i]nsolvency requires the court to use some practical business judgment about asset valuation." DANIEL R. COWANS, 2 BANKRUPTCY LAW AND PRACTICE 467 (7th ed. 1998).

3. The Third Circuit, contemplating the proper manner to determine fair valuation, has stated that where "liquidation in bankruptcy was not clearly imminent on the date of the challenged transfer . . . assets [are] valued on a going concern basis," not a liquidation basis. *In re Trans World Airlines, Inc.*, 134 F.3d at 193; *see also Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1067 (3d Cir. 1992); *In re Lids Corp.*, 281 B.R. at 541 (going concern where company planned to continue operations as usual on valuation date). Contrarily, "going concern value is not the proper standard if the business is 'on its deathbed'" at the time of the transfer. *Matter of Taxman Clothing Co., Inc.* 905 F.2d 166, 170 (7th Cir. 1990). A company is on its deathbed only when it is "wholly inoperative, defunct, or dead on its feet." *In re Art Shirt Ltd., Inc.*, 93 B.R. 333, 341 (E.D. Pa. 1988). Therefore, a company need not be thriving to receive going concern valuation. *Id.*

4. Inacom, as of April 22, 2000, employed thousands of people, continued to carry on its business, and was actively engaged in pursuing the Service Business. Inacom was a going concern, through at least April 22, 2000. Therefore, in valuing Inacom for purposes of

determining whether Inacom was solvent on the date of the Payments, Inacom as a matter of law should be valued on a going concern basis, not as a company in liquidation.

5.  The Third Circuit has defined the fair valuation of assets, in the going concern context, as "'market value' rather than 'distress value,' but . . . the valuation must be analyzed 'in a realistic framework' considering amounts that can be realized 'in a reasonable time' assuming a 'willing seller' and a 'willing buyer.'" *In re Trans World Airlines, Inc.*, 134 F.3d at 193-94; *see also In re Lids Corp.*, 281 B.R. at 541.

6.  A "reasonable time" is defined as an estimate of the time that a typical creditor would find optimal: not so short a period that the value of the goods is substantially impaired via a forced sale, but not so long a time that a typical creditor would receive less satisfaction of its claims, as a result of the time value of money and typical business needs, by waiting for the possibility of a higher price. *In re Trans World Airlines, Inc.*, 134 F.3d at 195 (in that case a reasonable time was twelve (12) to eighteen (18) months); *see also In re Lids Corp.*, 281 B.R. at 541.

7.  In this context, the fair valuation/market value is "the amount that may be realized if the Company's aggregate assets are sold as an entirety with reasonable promptness in an arm's length transaction under present conditions for the sale of comparable business enterprises, as such conditions can reasonably evaluated by . . ." an expert. *In re Lids Corp.*, 281 B.R. at 541.

8.  Furthermore, the debtor's "assets must be valued at what they are reasonably worth at the time of the allegedly preferential transfers and <u>not what they turned out to be worth at some time after the bankruptcy intervened</u>." *In re Davis*, 120 B.R. 823, 825 (Bankr. W.D. Pa. 1990) (emphasis added); *see also Total Tech. Servs., Inc. v. Whitworth*, 150 B.R. 893, 900 (Bankr. D. Del. 1993). Consistent with this rule, the Third Circuit has stated that "the use of hindsight to evaluate a debtor's financial condition for purposes of the [Bankruptcy] Code's

'insolvency' element has been criticized by courts and commentators alike." *In re R.M.L., Inc.*, 92 F.3d 139, 155 (3d Cir. 1996). Indeed, "[t]here is overwhelming authority to the effect that . . . subsequent dismemberment [of the debtor] . . . should not enter into the picture." *In re Trans World Airlines, Inc.*, 134 F.3d 188, 197-98 (3d Cir. 1998) (quoting Lawrence P. King, 2 Collier on Bankruptcy ¶ 101.32[4], p. 101-16 (15th ed. 1997)), *cert. denied*, 523 U.S. 1138 (1998).

9. Once the fair value of Debtor is determined, "it is necessary to reduce that value by the liabilities which existed on the Valuation Date to determine if "the debtor was insolvent. *In re Lids Corp.*, 281 B.R. at 545. Unlike assets, debts are measured at their face value and not at market value. *In re Trans World Airlines, Inc.*, 134 F.3d 188, 190, 196 (3rd Cir. 1998); *In re Lids Corp.*, 281 B.R. at 545. Contingent liabilities, however, are "limited to costs arising from foreseeable events that might occur while the debtor remains a going concern." *In re Trans World Airlines, Inc.*, 134 F.3d at 196-98; *see also In re Lids Corp.*, 281 B.R. at 546. Therefore, "[c]ontingent liabilities do not include costs associated with liquidation or dissolution of the debtor" as this would inherently contradict the going concern status of the debtor. *In re Lids Corp.*, 281 B.R. at 546; *see also In re Trans World Airlines, Inc.*, 134 F.3d at 197-98.

10. Further, hindsight is forbidden when a court is assessing whether an entity was on its financial deathbed at the time of the transfer(s). *In re Payless Cashways, Inc.*, 290 B.R. 689, 705 (Bankr. W.D. Mo. 2003); *In re DAK Indus., Inc.*, 195 B.R. 117, 125 (Bankr. C.D. Cal. 1996). Therefore, evidence after April 22 time period, is irrelevant to the inquiry.

11. Under the foregoing valuation standards, Tech Data has provided sufficient evidence to rebut the presumption of insolvency, thus shifting the burden of persuasion to Inacom to establish by a preponderance of the evidence that Inacom was insolvent during the period of the alleged Preferential Payments at issue in this action.

12. Inacom was solvent at least through April 22, 2000. As of April 22, 2000, Inacom had an aggregate equity value of between $44,000,000 and $144,000,000. The legal conclusion is based upon the April 2000 income statement prepared by Inacom, the collective opinions of third parties with substantial expertise in valuing business, including but not limited to Goldman Sachs and Houlihan Lokey, Compaq Computer's determination that it would enter into a $55 million dollar subordinated loan with Inacom and a three year, $420 million dollar service agreement, a separate service and support agreement whereby Inacom's employees were to work with Compaq's in the future, the revolving credit facility with Deutsche Bank with availability in the range of $89,681,203 in April and Borrowing Base Reports prepared by Inacom.

13. Because Inacom was solvent through April 22, 2000, Inacom is not entitled to any recovery as to any of the Payments made prior to that date, having failed to satisfy the requirement of 11 U.S.C. § 547 (b)(3). Therefore, the maximum amount Inacom may even be entitled to recover, subject to Tech Data's affirmative defenses discussed below, is $40,625.17.

### IV. Tech Data's Theory of Damages

As set forth in detail above, Inacom cannot establish necessary elements of its preference claim. Accordingly, Tech Data denies that Inacom is entitled to any relief or recovery whatsoever against Tech Data.

### V. Tech Data's Theory of Any Anticipated Motion for Directed Verdict

Tech Data reserves the right to assert a Motion for Directed Verdict as circumstances warrant at trial.

### VI. Tech Data's Proposed Jury Instructions and Verdict Forms

Tech Data is filing three sets of marked Proposed Jury Instructions and Verdict Forms concurrently herewith.

## VII. Tech Data's Proposed Jury Voir Dire Questions

Tech Data is filing a list of questions that Tech Data requests the Court to ask prospective jurors concurrently herewith.

Dated: August 15, 2004

Respectfully submitted,

HERLIHY, HARKER & KAVANAUGH

/s/ James F. Harker
James F. Harker (Bar No. 255)
1300 North Market Street, Suite 400
Wilmington, Delaware 19899
Telephone: (302) 654-3111

-and-

ADORNO & YOSS, LLP
Charles M. Tatelbaum (Admitted Pro Hac Vice)
Stephen C. Hunt (Admitted Pro Hac Vice)
Nicole Testa
350 E. Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
Telephone: (954) 763-1200
Facsimile: (954) 766-7800

*Attorneys for Tech Data Corporation*