UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| INACOM CORP., et al.<br><br>　　　　　Plaintiffs<br>v.<br><br>TECH DATA CORPORATION<br><br>　　　　　Defendants | Civil Action No. 04-CV-148 (GMS) |
| INACOM CORP., et al.<br><br>　　　　　Plaintiffs<br>v.<br><br>DELL COMPUTER CORP.<br><br>　　　　　Defendants | Civil Action No. 04-CV-582 (GMS) |
| INACOM CORP., et al.<br><br>　　　　　Plaintiff<br>v.<br><br>LEXMARK INTERNATIONAL, INC.<br><br>　　　　　Defendant | Civil Action No. 04-CV-583 (GMS) |
| INACOM CORP, et al.<br><br>　　　　　Plaintiff<br>v.<br><br>INGRAM ENTERTAINMENT, INC.<br><br>　　　　　Defendant | Civil Action No. 04-CV-593 (GMS) |

**TECH DATA CORPORATION'S REPLY
TO PLAINTIFF'S OPPOSITION TO MOTION
TO EXCLUDE TESTIMONY AND REPORT OF DEAN VOMERO**

{210346.0002/N0564098_1}006005.00189:176660.04

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... i

A.      Introduction ........................................................................................................... 1

B.      Vomero Uses a "Liquidation," Rather Than a "Going Concern" Methodology ................. 1

C.      Vomero Improperly Uses Hindsight in His Valuation Analysis ........................................ 2

# TABLE OF AUTHORITIES

## Cases

*In re Davis,* 120 B.R. 823 (W.D. Penn. 1990) ............................................................................. 2

*In re Davis,* 120 B.R. at 825 ........................................................................................................ 3

*In re Lids Corp.,* 281 B.R. 535 (Bankr. D. Del. 2002) ................................................................ 2

*In the Matter of Taxman Clothing Co.,* 905 F.2d 166 (7th Cir. 1990) ........................................ 3

### TECH DATA CORPORATION'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY AND REPORT OF DEAN VOMERO

#### A. Introduction

An intervening catastrophic liquidity crisis *after* the Valuation Date caused the ultimate insolvency and bankruptcy of InaCom. On the Valuation Date, InaCom was an operating viable company supported by sizeable lines of credit with substantial borrowing availability and with valuable contract rights with Compaq, one of which guaranteed $420 million incremental revenue over the next three years. Plaintiff's insolvency expert, Dean Vomero, has at least two fundamental failures of methodology. One, he uses a "liquidation" rather than a "going concern" valuation. Two, he relies upon circumstances and events subsequent to the valuation date.[1]

#### B. Vomero Uses a "Liquidation," Rather Than a "Going Concern" Methodology

Vomero uses a "liquidation," rather than a "going concern" methodology. He improperly values InaCom's assets piecemeal, item-by-item, rather than as an operating whole with synergy among its assets. Vomero's piecemeal, item-by-item valuation method is revealed by the April 19, 2005 Bridge Associates Valuation Analysis, attached as Exhibit A. For instance, Vomero gives a mere 5% "recovery value" to Inacom's furniture, fixtures, and equipment. (Exh. A, p. 7). Additionally, when discussing Inacom's computer software, Vomero claims that it was unique to Inacom, thus, according to Vomero, giving it almost no value. *Id.* He also gives virtually no

---

[1] Inacom claims that Defendants' Motion to Exclude Vomero should be denied for procedural defects. However, Tech Data expressly objected to the Plaintiff's listing of Vomero in the list of proposed expert witnesses in the Pre-Trial Order. As the Motion is not an in limine motion, it is respectfully submitted that it identification was not mandated in the Pre-Trial Order, contrary to Inacom's assertion, and it was in any event filed contemporaneously with the Pre-Trial Order papers on August 15, 2005. Inacom cannot therefore make a credible claim of any prejudice. Inacom identified several in limine motions in the Pre-Trial Order, but did not serve them on Tech Data any sooner than the instant Motion was served upon Inacom—in fact, the Plaintiff's motion pertaining to Tech Data's expert witnesses was served later, as discussed infra. If Tech Data was in error in filing same as an objection and motion to exclude, rather than a motion in limine, Defendants' motion suffers no more procedural defect than Inacom's own motions in limine, for Inacom did not file, nor provide Defendants, Inacom's motions in limine until August 15, 2005 (the same day as the filing of the Joint Pretrial Orders), whereas the Court's form Final Pretrial Order required all motion in limine briefing (opening, answering, and reply) to be filed with the Joint Pretrial Order. In fact, Tech Data Corporation was not served with Inacom's motion in limine as to Whalen and Fensterstock until August 19, 2005. Defendants were thus precluded from answering such motions in limine on August 15, 2005.

value to Inacom's Goodwill, again showing that Vomero is valuing Inacom on a liquidation/forced sale basis. (Exh. A, p. 8). Indeed, Vomero's entire methodology is to simply discount the value of Inacom's individual assets to arrive at a liquidation valuation.[2]

In construing and expounding upon *In re Trans World Airlines, Inc.*, Judge Walrath approved a definition of "fair valuation" in the context of a going concern as "the amount that may be realized if the <u>Company's aggregate assets are sold as an entirety</u>." *See In re Lids Corp.*, 281 B.R. 535, 543 (Bankr.D.Del. 2002) (underscoring added). Indeed, the market multiple methodology (earnings/revenue analysis) and comparable transaction methodology are appropriate methods for determining the going concern value of a company. *Id.* at 543-45. These valuation methods necessarily look at the total value of the enterprise and only make sense if valuing the enterprise as a whole, rather than by a piecemeal, item-by-item valuation. Moreover, the court in *In re Davis* elaborated on the proper valuation method when the business was a going concern:

> If the business is in fact being conducted at the relevant time, then its assets must be valued, not as isolated articles separated from the whole, but as parts of the whole and useful in that relationship. Only where a business is wholly inoperative, defunct, or dead on its feet will going concern valuation be abandoned in favor of an item by item fair market valuation.

*In Re Davis*, 120 B.R. 823, 826 (W.D.Penn. 1990). Vomero's item-by-item analysis is akin to valuing a used, but functioning, automobile by focusing on the aftermarket value of its individual parts (e.g. steering wheel, tires, fenders) rather than on the value of the automobile as a whole.

C. **Vomero Improperly Uses Hindsight in His Valuation Analysis**

Vomero improperly uses hindsight in his valuation analysis by relying on events well

---

[2] Inacom, by footnote, attempts to erase the clear distinction between going concern and liquidation valuation, by stating "liquidation is merely a synonym for conversion to cash." (Inacom's Resp., p. 4 n. 6). This ignores the fundamental distinction between liquidation and going concern valuation. Indeed, Vomero testified it was irrelevant to him whether Inacom was a going concern. *See* Vomero deposition p. 128, lines, 6 – 14, Exhibit B.

after the valuation date to reach an opinion on insolvency as of that date.³ Inacom's discussion of the April 22 and March 25, 2000 financial statements is a red herring. Defendants object, not to the use of the April 22 and March 25 financial statements, but to Vomero's use of events well after the relevant time period. Examples of Vomero's use of post-factum events include his frequent references to financial *projections* (not financial *statements*) of the Blackstone Group prepared *in May 2000* and to the bankruptcy proceedings filed on June 16, 2000.⁴ Contrary to Inacom's assertion, Defendants' solvency experts, Messrs. Whalen and Fensterstock do not exclude, but explicitly use and rely on, financial statements for periods ended March 25 and April 22; but they do exclude from consideration "forecasts" prepared by the Blackstone Group, hired by Inacom in May 2000 to prepare financial projections to market the company. Inacom's excerpts from Whalen's and Fensterstock's deposition are misrepresentative of their testimony.⁵

Inacom attempts to distract from its use of hindsight by claiming that Defendants' citations on hindsight are "all inaccurate and/or inapposite." (Plaintiff's Resp., at p. 4). Inacom, once again, is simply wrong. For instance, contrary to Inacom's assertion, *Taxman* is a preference case. *In the Matter of Taxman Clothing Co.*, 905 F.2d 166, 168 (7th Cir.1990). Inacom also wrongly claims that the language from *In Re Davis* cited by Defendants is not found in the case. This language appears verbatim in *In Re Davis* at page 825. *In re Davis*, 120 B.R. at 825. Finally, though Defendants do cite fraudulent conveyance cases that exclude use of hindsight in a solvency determination, Defendants also cite numerous cases dealing explicitly with exclusion of hindsight in preference cases. Inacom offers nothing to show why these cases or the proposition forbidding use of hindsight, for which they are cited, are inapposite.

---

³ *See* Vomero deposition, p. 230, lines 6 – 16, Exhibit B.
⁴ *See* Exhibit C hereto.
⁵ *See* Exhibits D and E hereto

Dated: September 6, 2005

        Respectfully submitted,

        HERLIHY, HARKER & KAVANAUGH

        /s/ James F. Harker
        James F. Harker (Bar No. 255)
        1300 North Market Street, Suite 400
        Wilmington, Delaware 19899
        Telephone: (302) 654-3111

        and

        ADORNO & YOSS, LLP
        Charles M. Tatelbaum
        (Admitted Pro Hac Vice)
        Stephen C. Hunt
        (Admitted Pro Hac Vice)
        350 E. Las Olas Boulevard, Suite 1700
        Fort Lauderdale, FL 33301
        Telephone: (954) 763-1200
        Facsimile: (954) 766-7800

        *Attorneys for Defendant and Third-Party Plaintiff, Tech Data Corporation*