UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

In re:

INACOM CORPORATION, *et al.*,

    Debtors.
_____/

INACOM CORPORATION, etc.,

    Plaintiff,

v.

TECH DATA CORPORATION,
    Defendant and
    Third Party Plaintiff,

v.

HEWLETT-PACKARD COMPANY,

    Third-Party Defendants.
_____/

Civil Action No. 1:04-cv-00148-GMS

Bankr. Case No. 00-02426 (PJW)
Adv. Pro. No. 02-03496 (PJW)

### DEFENDANT TECH DATA CORPORATION'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52(c)

Tech Data Corporation, a Defendant herein ("Tech Data"), respectfully submits the following proposed findings of fact and conclusions of law in support of its Motion pursuant to Rule 52(c)

**I.   FINDINGS OF FACT**

    **A.   The Parties and Procedural History**

1.   Tech Data is a corporation formed under the laws of the State of Florida, with its principal place of business located at 5350 Tech Data Drive, Clearwater, Florida. Tech Data sells computer products and peripherals, as well as a variety of other electronic products.

2. On June 16, 2000 (the "Petition Date") InaCom Corp. ("InaCom") and its affiliated Debtors (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. On June 16, 2000, the United States Bankruptcy Court for the District of Delaware entered an order consolidating the Debtors' Chapter 11 cases for administrative purposes only (joint administration). Following the Petition Date, the Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. InaCom filed a Complaint for Avoidance and Recovery of Preferential Transfers (the "Complaint") on May 16, 2002 against Tech Data.

5. Tech Data filed a Motion to Dismiss the First Amended Complaint on July 10, 2003, to which InaCom filed an Opposition on July 29, 2003.

6. Tech Data's Motions to Dismiss the original Complaint and the First Amended Complaint resulted in a Letter Opinion by Bankruptcy Judge Peter J. Walsh dated April 1, 2004. Judicial notice of Judge Walsh's Letter Opinion is hereby taken pursuant to Rule 201 of the Federal Rules of Evidence. Importantly, Judge Walsh digested the disputes between Tech Data and InaCom, and Tech Data and HP, as follows:

> As I understand Tech Data's position, it is that pursuant to a pre-petition asset purchase agreement between Compaq Computer Corporation ("Compaq") and InaCom, Compaq assumed InaCom's obligations to Tech Data and those obligations are the antecedent debts to which the alleged transfer payments were made. Nowhere in the documents can I find any information which would tell me whether in fact Compaq assumed and paid those InaCom obligations to Tech Data. If, in fact, Compaq did not assume those obligations or if it did not pay them, then there is no basis to accept Tech Data's argument that it did not receive more than it would have received had InaCom filed a chapter 7 case. On the other hand, <u>if in fact Compaq assumed the obligations and paid the obligations, then it would appear that InaCom may have made the</u>

> payments to Tech Data without an obligation to do so. If so, InaCom may have a cause of action other than a preference.

InaCom Corp. v. Tech Data Corp., Adv. Pro. No. 02-3496 (PJW), slip op. at 2 (Bankr. D. Del. Apr. 1, 2004) (emphasis not in original).

7. As Bankruptcy Judge Walsh implied, if Compaq assumed the account payable obligation to InaCom, InaCom cannot maintain a preference action against Tech Data, as InaCom will be unable to satisfy the statutory requirements of proving a preference as set forth in Bankruptcy Code Section 547(b). Notwithstanding this warning by Judge Walsh to InaCom's counsel, InaCom never sought to further amend its complaint to include any additional theories of recovery other than that of preferential transfer, under Section 547 of the Bankruptcy Code.

8. On March 23, 2004 Tech Data filed its Motion to Withdraw the Reference and Motion to Determine Core/Non-Core Status, to which InaCom filed Opposition on March 8, 2004.

9. On June 25, 2004, over the objection of InaCom, this Court entered an Order withdrawing the reference of this adversary proceeding to the bankruptcy court.

10. On October 17, 2005, trial of this case began without a jury. InaCom has presented its case and has rested.

**B.    Debtors' Financial Condition At the Time of the Alleged Preferential Transfers**

11. The Debtors were originally in two basic lines of business: computer hardware and peripherals distribution (the "Distribution Business") and a technology service business (the "Service Business"). Through these businesses the Debtors delivered personal computer and related information technology products to businesses and provided various technology-related services, managing the entire technology lifecycle, including technology planning, technology procurement, technology integration, technology support, and technology management.

12. In late 1999, the Debtors entered into negotiations with Compaq Computer Corporation ("Compaq"), one of their largest distribution vendors, for the sale of the Distribution Business to Compaq. Upon the sale of the Distribution Business to Compaq, InaCom fully intended to continue operating the Service Business, which historically enjoyed higher margins than the Distribution Business, and Compaq had promised to be a major InaCom customer. Specifically, for the first nine months of 1999, the Service Business had a Gross Margin of approximately 37%; whereas, for that same time period, the Distribution Business had a Gross Margin of approximately only 7%. Therefore, the sale to Compaq permitted InaCom to focus its business on the high-margin Service Business as opposed to the low-margin Distribution Business.

13. As a result of these negotiations, on January 4, 2000, InaCom signed an Asset Purchase Agreement (the "APA") and certain related operational agreements with Compaq and its acquisition subsidiary ITY Corp., subsequently known as Custom Edge, Inc. (referred to collectively as "Compaq"). Defense Exhibit # 53.

14. Under the APA, Compaq agreed to purchase substantially all of the assets of InaCom's Distribution Business (the "Compaq Sale").

15. On January 4, 2000 InaCom filed its Form 8-K with the Securities and Exchange Commission which addressed, in pertinent part, the proposed sale of assets to Compaq, which by virtue of mergers and consolidation is now Hewlett-Packard Company. Defense Exhibit # 51.

16. InaCom, prior to the beginning of the Preference Period, engaged in a pattern or practice of "cutting" checks and holding such checks prior to sending them. InaCom acknowledges that it regularly held checks in the three and a half month period prior to the beginning of the Preference Period.

17. On February 16, 2000, the Compaq Sale closed.

18.  On February 16, 2000, InaCom and Compaq executed the Assumption and Assignment Agreement. Defense Exhibit # 89.

19.  By virtue of the APA and the Assumption and Assignment Agreement, Compaq was committed to assume all of the payables due to Tech Data that then existed and InaCom acknowledged and had agreed to such assumption.

C.  **Conclusions of Law Concerning Tech Data's Status With InaCom After The Compaq Sale And The Legal Consequences Which Bar Any Preference Liability By Tech Data Under Bankruptcy Code Section 547(b)**

20.  After the Compaq Sale, Tech Data was no longer a creditor of InaCom.

21.  By virtue of the Compaq Sale, the APA, the Assumption and Assignment Agreement, the Form 8-K and the Frasca Email, as well as the Francis Letter, Compaq had agreed to assume all accounts payable outstanding to Tech Data. This created a novation of the debtor-creditor relationship between InaCom and Tech Data, and severed that debtor-creditor relationship between InaCom and Tech Data. New contractual obligations between Compaq and Tech Data were created instead, whereby Tech Data became Compaq's account creditor based upon the assumption of the outstanding InaCom accounts payable.

22.  Accordingly, as a result of these events, there was no longer any indebtedness owing by InaCom to Tech Data after the Compaq Sale. The assumption by Compaq of the accounts payable owed by InaCom to Tech Data prior to the Compaq Sale meant that InaCom was no longer Tech Data's account debtor.

23.  The termination of the debtor-creditor relationship and the cancellation of any indebtedness by and between InaCom and Tech Data had several practical and legal

consequences to the pending dispute, and ensures that InaCom has failed to meet its burdens of proof and persuasion under 11 U.S.C. §§ 547(b), et seq.

24. First, InaCom has failed to meet its burden of proof that any monies paid by InaCom to Tech Data that are the subject of this dispute were "to or for the benefit of a creditor," within the meaning of 11 U.S.C. § 547(b)(1). Since Tech Data was no longer a creditor at the time of any transfers by InaCom to Tech Data, InaCom did not prove one of the elements of preference liability on the part of Tech Data.

25. Second, InaCom has failed to meet its burden of proof that any monies paid by InaCom to Tech Data that are the subject of this dispute were "for or on account of an antecedent debt owed by the debtor before such transfer was made," within the meaning of 11 U.S.C. § 547(b)(2). Upon the assumption of the InaCom accounts payable to Tech Data by Compaq, the indebtedness by InaCom was canceled. Accordingly, any monies paid to Tech Data by InaCom after the Compaq Sale were not on account of a legal obligation by InaCom to Tech Data.

26. The inability of InaCom to have satisfied each and every subsection of 11 U.S.C. §§ 547(b), et seq., means InaCom has failed to prove any liability on the part of Tech Data.

**D.    Conclusions of Law Regarding the Parties' Business Relationship**

27. For some time prior to the Petition Date, the Debtors purchased computer equipment and peripherals (the "Goods") from Tech Data. This relationship continuously existed for several years prior to the Petition Date, and InaCom had purchased Goods from Tech Data generally under standard net-thirty (30) day terms.

28. After the February 16, 2000 closing of the Compaq Sale, Tech Data continued to provide Goods to the Debtors under the same terms as it had prior to the Compaq Sale.

29. Within the ninety (90) day period prior to the Petition Date, the transferor debtor made payments to Tech Data in the total amount of $4,606,313.97 (the "Transfers").

30. All of the Transfers were accepted by Tech Data, albeit without regard to any account stated or open, as the assumption of InaCom's account payable obligation through the APA and the Francis Letter had terminated Tech Data's debtor creditor relationship with InaCom.

31. The Transfers were not made to or for the benefit of a "creditor," within the meaning of Section 547(b)(1) of the Bankruptcy Code, due to Compaq's assumption of the indebtedness.

32. The Transfers were not made for or on account of an "antecedent debt" owed by the transferor debtor before such transfers were made, within the meaning of Section 547(b)(2) of the Bankruptcy Code, again due to Compaq's assumption of the indebtedness.

33. InaCom is not entitled to the recovery of any alleged Transfers pursuant to Section 550 of the Bankruptcy Code. As InaCom cannot prove a prima facie case under Section 547 of the Bankruptcy Code and has not timely pled any other theory of recovery for the Transfers, it has no basis for recovery pursuant to Section 550 of the Bankruptcy Code.

## II. FURTHER CONCLUSIONS OF LAW:

### A. Jurisdiction and Venue

34. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 547 and 550.

35. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

36. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (F), and (O).

### B. InaCom's Preference Claim—11 U.S.C. § 547(b)

37. InaCom brought this adversary proceeding against Tech Data pursuant to 11 U.S.C. §§ 547 and 550 to avoid transfers of the Debtors property to wit: the payments to Tech Data for products previously sold to and accepted by InaCom. InaCom has failed to meet its

burden of proof under 11 U.S.C. § 547(b). Under Section 547(b) of the Bankruptcy Code, InaCom has the burden of proof to establish that such transfers were:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (a) on or within ninety (90) days before the date of filing of the petition; or

    (b) between ninety (90) days and one year before date of the filing of the petition, if such creditor at the time of the transfer was an insider; <u>and</u>

(5) enabled the creditor to receive more than such creditor would receive if—

    (a) the case were a case under chapter 7 of this title [title 11];

    (b) the transfer had not been made; and

    (c) such creditor received payment of such debt to the extent provided by the provisions of this title [title 11].

Proof of each of these five (5) elements is required in order for InaCom to sustain its burden of proof under 11 U.S.C. § 547(b).

38. As a matter of law, InaCom has not proven that Tech Data was a creditor of InaCom at the time that Tech Data received the transfers from InaCom. InaCom has therefore failed to carry its burden of proof under 11 U.S.C. § 547(b)(1).

39. As a matter of law, InaCom has not proven that there was an indebtedness between itself and InaCom at the time that Tech Data received the transfers from InaCom. InaCom has therefore failed to carry its burden of proof under 11 U.S.C. § 547(b)(2).

40. Section 550 of the Bankruptcy Code does not apply if the payments cannot be avoided, and InaCom has failed to prove that the payments to Tech Data are avoidable under Section 547 of the Bankruptcy Code.

C.  **Conclusion**

41. For the foregoing reasons, the Court finds that Tech Data is not liable to InaCom for any of the Payments and that InaCom is entitled to no relief or recovery whatsoever against Tech Data.

Dated: October ____, 2005

Respectfully submitted,

HERLIHY, HARKER & KAVANAUGH

/s/ James F. Harker
James F. Harker (Bar No. 255)
1300 North Market Street, Suite 400
Wilmington, Delaware 19899
Telephone: (302) 654-3111

-and-

ADORNO & YOSS, LLP
Charles M. Tatelbaum (*Admitted Pro Hac Vice*)
Stephen C. Hunt (*Admitted Pro Hac Vice*)
350 E. Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL  33301
Telephone: (954) 763-1200
Facsimile:  (954) 766-7800
*Attorneys for Defendant,*
    *Tech Data Corporation*